# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

SECURITIES AND EXCHANGE          §
COMMISSION,                       §
                                  §
    Plaintiff,               §
                                  §
v.                                §          CIVIL ACTION NO. 3:08-CV-1105-B
                                  §
MICROTUNE, INC., DOUGLAS J.       §
BARTEK, and NANCY A.              §
RICHARDSON,                       §
                                  §
    Defendants.              §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Douglas J. Bartek's ("Bartek") Motion for Summary Judgment

filed June 4, 2010 (doc. 115). Following a hearing on November 19, 2010, the Court denied Bartek's

motion in part, reserving ruling on his argument that the SEC's claims are barred by the five-year

limitations period found in 28 U.S.C. § 2462 ("Section 2462").[1] Order Nov. 23, 2010. The precise

questions reserved for further consideration were: 1) whether the doctrine of fraudulent

concealment, relied on by the SEC, operates to toll the running of the five-year limitations period

under the facts of this case, and 2) which of the SEC's proposed remedies were penalties subject to

---

[1] Although Defendant Nancy A. Richardson did not formally move for summary judgment as to her limitations defense, she did argue that she was entitled to that defense in her response to the SEC's Motion for Partial Summary Judgment. Richardson Br. Opp'n 7-19. She also argued in her Supplemental Briefing on the SEC's motion that the Court should not only deny the SEC's motion but also grant summary judgment for her on limitations based on *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir. 1989). Richardson Supplemental Br. 10. The Court previously denied the SEC's motion but did not determine whether summary judgment on the issue of limitations for Richardson, as a nonmovant, was appropriate. The Court finds that this issue is now ripe for determination.

Section 2462. Having provided the parties an opportunity to submit additional briefing and having now reviewed all of the materials submitted in connection with not only Bartek's motion but also Defendant Nancy A. Richardson's Motion for Summary Judgment and the SEC's Motion for Partial Summary Judgment, these issues are ripe for review. For the reasons set forth below, the Court finds that there is no genuine issue of material fact as to whether the SEC met all the requirements of the fraudulent concealment doctrine, and therefore its claims are not tolled. The Court also finds that all of the SEC's proposed relief is properly characterized as penalties subject to Section 2462's statute of limitations, with the exception of disgorgement of Richardson's "in-the-money" profits from the exercise of backdated stock options.

# I.

## BACKGROUND

The SEC filed this enforcement action against Microtune, Inc., a publicly traded company, and two of its former executives, Richardson and Bartek, accusing them of engaging in a fraudulent stock-option backdating scheme between 2000 and mid-2003. According to the SEC, Richardson, Microtune's former Chief Financial Officer and General Counsel and Bartek, its former Chief Executive Officer, fraudulently backdated stock options granted to certain executives and company employees to ensure the options were "in the money" or profitable for the grantees.[2] The two

---

[2] More fully described in the SEC's First Amended Complaint ("FAC"), the SEC maintains that the backdating scheme operated as follows:

> Bartek and Richardson's stock option misconduct fell into three categories: (i) backdating grants to newly hired executives and other employees; (ii) backdating large "block" grants to officers and rank-and-file employees; and (iii) granting (backdated) options, cancelling those options when the company's stock price dropped precipitously, and subsequently re-granting the same options at substantially lower exercise prices, all without recognizing the appropriate compensation expense, and without disclosing the executive options' in-the-money value

defendants are further charged with failing to record and report the corresponding expense –
resulting from the "in-the-money" transactions – on the company's financial statements and in
Commission filings, an omission that purportedly resulted in overstated income and understated
expenses. By manipulating stock options and thereafter failing to properly record and recognize the
transactions, the SEC maintains that Richardson and Bartek violated a litany of federal securities
laws.[3] Among its requested remedies, the SEC seeks civil monetary penalties, officer-and-director
bars, a permanent injunction, disgorgement and reimbursement for ill-gotten bonuses and stock
profits.[4] Bartek and Richardson deny the SEC's allegations and, in turn, have raised a number of
affirmative defenses to the charges, including and most pertinent here, 28 U.S.C. § 2462's five-year
limitations bar.[5]

Summary judgment motions by the SEC, Richardson, and Bartek were filed in June 2010. All
three motions have been denied, Order Oct. 29, 2010 and Order Nov. 23, 2010, save and except

---

when granted as executive compensation.

FAC ¶ 4.

[3] These include: Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)];
Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)]; Section 13(a)
of the Exchange Act [15 U.S.C. § 78m(a)]; Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §
78m(b)(2)(A)]; Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)]; Section 13(b)5 of the
Exchange Act; and Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)]. FAC ¶ 15.

[4] The remedies are sought pursuant to: Section 20(d) of the Securities Act [15 U.S.C. § 77t(d);
Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; Section 20(e) of the Securities Act [15 U.S.C.
§ 77t(e)]; Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and Section 304 of the Sarbanes-
Oxley Act [15 U.S.C. § 7243]. FAC ¶ 212.

[5] The crux of Bartek's and Richardson's limitations defense is that most of the acts forming the basis
of the SEC's case occurred between 2001 and mid-2003. They argue that because the SEC did not file suit
until June 30, 2008, the bulk of its claims are barred by the applicable five-year limitations period found in 28
U.S.C. § 2462.

that portion of Bartek's motion regarding limitations, the subject of this order. A brief dissection of the Court's summary judgment rulings relevant to this analysis is elucidating. The SEC moved for partial summary judgment on Bartek's and Richardson's affirmative defenses, its primary focus being the defendants' limitations defense. SEC Mot. 9-17. The Commission argued that it was entitled to judgment as a matter of law on Richardson's and Bartek's statute of limitations defense because the "discovery rule" and certain equitable tolling principles including "fraudulent concealment" and the "continuing violations doctrine" applied and salvaged claims that would otherwise be barred by the five-year statute of limitations. The SEC also argued that its requested remedies, with the exception of civil monetary penalties, were equitable remedies not subject to limitations. As set forth in this Court's Order dated November 23, 2010 and for the reasons detailed on the record at the hearing held November 19, 2010, Hr'g Tr. Nov. 19, 2010 at 109-13, the Court denied the SEC's Motion for Partial Summary Judgment in its entirety, specifically rejecting the applicability of the discovery rule and the continuing violations doctrine to its claims.

Separately, Richardson and Bartek filed voluminous motions for summary judgment. As set forth in this Court's Order dated October 29, 2010 and for the reasons detailed on the record at the hearing on the same day, Hr'g Tr. Oct. 29, 2010 at 83-86, Richardson's motion was denied in its entirety. Bartek's motion, at issue here, was later denied in part, Order Nov. 23, 2010 and Hr'g Tr. Nov. 19, 2010 at 157-60, the Court reserving ruling and calling for additional briefing on Bartek's limitations defense as it relates to the SEC's reliance on the doctrine of fraudulent concealment. The Court also left open the issue of which remedies sought by the SEC were "penalties" subject to

Section 2462. The briefing is now complete on these issues and the motion is ripe for determination.[6]

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990) Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

---

[6] Although the Court did not request additional briefing regarding whether the SEC's requested relief constituted penalties under Section 2462, this issue was briefed by all parties in connection with the motions for summary judgment and also discussed at the November 19, 2010 hearing.

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (citation omitted). *See also John G. Mahler Co. v. Klein Karoo Landboukooperasie DPK*, 58 F.3d 636, 1995 WL 371037, at *3 n.2 (5th Cir. June 5, 1995) (explaining that *Celotex*, 477 U.S. at 324 and Fed. R. Civ. P. 56(e) require that the burden of proving the discovery rule remains with the party seeking to use it, even on summary judgment when that party is the non-movant).

In appropriate cases, the Court may also grant summary judgment against the movant even though the opposite party has not actually filed a motion for summary judgment. *In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 393 (5th Cir. 1989) (*citing Landry v. G.B.A.*, 762 F.2d 462, 464 (5th Cir. 1985). *See also* 10A Wright & Miller Fed. Prac. & Proc. § 2720 (3d ed.) (granting summary judgment in favor of nonmoving party may be appropriate in certain cases as "the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or to refute the request for the entry of judgment").

## III.

## ANALYSIS

A.    *Section 2462*

There is no express statute of limitations for enforcement claims brought by the SEC under

the Securities Act of 1933 or the Exchange Act of 1934, though 28 U.S.C. § 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first *accrued* if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462 (emphasis added). The parties correctly agree that the provision applies to the

SEC's claims for civil penalties, but they part ways on its applicability to the claims at hand.

Specifically, Bartek and Richardson maintain that "the date when the claim first accrued" language

in the statute means the "date of the violation" and, accordingly, most of the SEC's claims are

untimely because the Commission filed its case more that five years after the alleged violations

occurred. Richardson Br. Opp'n at 7-10; Bartek Br. Opp'n 15-17. The SEC, on the other hand,

argues that its claims are not barred under the statute because the doctrine of fraudulent

concealment applies and tolls the running of Section 2462's five-year term.[7] Bartek, framing the issue

now before the Court, contends that the SEC may not seek tolling relief through the doctrine of

fraudulent concealment because the Commission cannot meet its burden of proof to establish that

fraudulent concealment occurred in this case.

Bartek and Richardson further argue that all the forms of the SEC's requested relief are

---

[7] The SEC also argues that the discovery rule and the continuing violations doctrine apply to its claims, a contention this Court has already rejected.

penalties under Section 2462. Richardson Br. Opp'n 16-19, Bartek Br. Opp'n 12-15. The SEC counters that even if it is not entitled to tolling under the fraudulent concealment doctrine, all forms of the relief it seeks, aside from the civil monetary penalties, are equitable remedies not subject to Section 2462. SEC Br. Supp. Mot. 10-11.

B.     *Fraudulent Concealment*

The parties do not dispute that the doctrine of fraudulent concealment, if established, would toll the running of Section 2462's five-year limitations period. The parties disagree, however, both as to how the fraudulent concealment doctrine operates as well as to whether its principles apply to the facts of this case. For the reasons that follow, the Court finds that in order to show that the statute of limitations should be tolled, a plaintiff must show 1) the defendant's wrongdoing was concealed from the plaintiff, either through active concealment by the defendant or because the nature of the wrongdoing was such that it was self-concealing; 2) the plaintiff acted diligently once he had inquiry notice, i.e., once he knew of or should have known of the facts giving rise to his claim, and 3) the plaintiff did not have inquiry notice within the limitations period. A plaintiff seeking to defeat a motion for summary judgment on limitations through the doctrine of fraudulent concealment must therefore show, at a minimum, that a genuine issue of material fact exists as to each of these elements. Applying this test to this case, the Court finds that there is no genuine issue of material fact as to whether the SEC acted diligently nor as to whether the SEC discovered the alleged wrongdoing within the limitations period. Accordingly, Section 2462's statute of limitations is not tolled by the fraudulent concealment doctrine.

At the outset, the Court notes the confusion in the case authority regarding fraudulent concealment and other tolling doctrines, much of which is reflected in the parties' disagreements and

merits some discussion.[8] Courts sometimes use terms such as fraudulent concealment, the discovery rule, equitable tolling, and equitable estoppel interchangeably, which all operate to allow plaintiffs to continue with claims that may otherwise be barred by statutes of limitations, either by postponing the accrual of the claims or tolling the running of the statute of limitations. *See, e.g., Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450, 452-53 (7th Cir. 1990) (discussing and distinguishing tolling doctrines); Carli McNeill, *Seeing the Forest: A Holistic View of the RICO Statute of Limitations*, 85 Notre Dame L. Rev. 1231, 1250-59 (2010) (examining courts' application of tolling doctrines). Each doctrine operates under the same general principle – something prevented the plaintiff from filing his case within the normal limitations period.[9] However, courts vary widely in their application of these doctrines. The Seventh Circuit's version of fraudulent concealment requires that the defendant do something to conceal the fraud itself, beyond committing the actual fraud which underlies the plaintiff's claims. *Cada*, 920 F.2d at 451. Also, fraudulent concealment under Seventh Circuit law postpones the accrual of the claim, rather than toll the limitations period, and it has no requirement of diligence as to the plaintiff.[10] *Id.* The Seventh Circuit considers fraudulent concealment a doctrine distinct from equitable tolling – equitable tolling under Seventh Circuit law

---

[8] Indeed, Judge Posner, midway through a discussion of various tolling doctrines, explained "[w]e said that statute of limitations law is confusing, and now you'll believe us! And we're not through." *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 852 (7th Cir. 1996).

[9] The plaintiff may be prevented from filing his case by the nature of the alleged wrongdoing itself or by additional steps taken by the defendant to prevent the plaintiff from filing in time, such as actions to conceal the wrongdoing or dilatory tactics such as promising not to plead the defense of statute of limitations.

[10] The Seventh Circuit's version of fraudulent concealment appears to be the functional equivalent of the discovery rule. *See SEC v. Koenig*, 557 F.3d 736, 739 (7th Cir. 2009) (under either discovery rule or equitable tolling, "a victim of fraud has the full time from the date that the wrong came to light, or would have done had diligence been employed") (Easterbrook, J.) (citation omitted).

requires that the underlying fraud be self-concealing and also requires that the plaintiff bring his claim as soon as reasonably practicable after he has inquiry notice. *Id.* at 452-53.

The Fifth Circuit, in contrast, appears to apply a different version of fraudulent concealment, which is also referred to as equitable tolling.[11] The parties are in agreement that under the fraudulent concealment doctrine, the SEC must establish, at a minimum, that (1) the defendant's wrongdoing was concealed **AND** (2) the plaintiff failed to discover the facts that form the basis of his claim and acted diligently. *See, e.g., In re Energy Transfer Partners Natural Gas Litig.*, 2009 WL 2633781, at *13 (S.D. Tex. Aug. 26, 2009) (citing *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988)) (other citations omitted); *SEC v. Jones*, 476 F. Supp. 2d 374, 382 (S.D.N.Y. 2007). The parties dispute the operation of these elements, whether there is an additional element the SEC must prove, and how the doctrine applies to the facts of this case.

First, the parties disagree whether under Fifth Circuit law the concealment element may be proven by showing that the wrong itself was self-concealing, either because of the inherent nature of the wrongdoing or under the facts of the case.[12] Second, the parties dispute what showing of diligence the SEC must provide: the SEC argues that it only has to show that it was diligent up until it had inquiry notice of Microtune's backdating, while Richardson and Bartek argue, in essence, that

---

[11] The Court uses the terms fraudulent concealment and equitable tolling interchangeably, although it recognizes that these are distinct terms as used by the Seventh Circuit. At least one court within the Fifth Circuit distinguishes between an act of concealment by the defendant which conceals the plaintiff's cause of action, which could trigger *equitable tolling*, and action by the defendant to cause the plaintiff to miss the filing deadline, even though the plaintiff knows his cause of action exists, which could trigger *equitable estoppel*. *In re Enron Corp. Secs., Derivative, & ERISA Litig.*, 310 F. Supp. 2d 819, 856 (S.D. Tex. 2004) (citing *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000)).

[12] Of course, this element may also be shown through affirmative acts by the defendant to conceal his wrongdoing.

the SEC's duty of diligence encompassed its actions from inquiry notice until and including the filing of the suit. Third, the parties dispute whether the fraudulent concealment doctrine contains a third element: that the plaintiff did not discover the alleged wrongdoing during the limitations period. Fourth, the parties dispute whether the facts show that Bartek and Richardson concealed their alleged wrongdoing and when the SEC first had inquiry notice. The Court will now examine these arguments and apply the applicable law to the facts of this case. Overall, the Court finds that there is no genuine issue of material fact as to whether the SEC acted diligently nor any issue as to whether the SEC had inquiry notice during the limitations period. As such, the SEC is not entitled to tolling under the fraudulent concealment doctrine.

i.     Concealment

The concealment element may be shown through evidence that the wrong itself was self-concealing or that the defendant took affirmative steps to conceal its existence. *SEC v. Gabelli*, 2010 WL 1253603, at *6-7 (S.D.N.Y. March 17, 2010) (citing *Jones*, 476 F. Supp. 2d at 382) (other citations omitted)). The SEC insists that fraud-based claims are inherently self-concealing as a matter of law, based on its misreading of the Fifth Circuit's holding in *State of Texas v. Allan Construction*. SEC Br. Opp'n at 6-8 (citing *Allan Constr.*, 851 F.2d at 1529, 1531-32 and *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 341 n. 2 (5th Cir. 1971)). But in *Allan Construction*, a case involving an antitrust bid-rigging conspiracy, the issue before the court was whether bid-rigging, a non-fraud cause of action, was by its nature "always self-concealing." *Allan Constr.*, 851 F.2d at 1529-31 (citing *Prather*, 446 F.2d at 341 n. 2). In concluding that bid-rigging was not inherently self-concealing, the court referenced "the general rule" that fraud is by nature self-concealing and thus sufficient alone to trigger equitable tolling under the doctrine of fraudulent concealment. *Id.* at 1529.

But the Fifth Circuit's holding that bid-rigging was not inherently self-concealing did not rest upon or even implicitly incorporate a determination that fraud claims – grounded in either federal or state law – are *always* self-concealing. At best, the reference to the "general rule" was *dicta,* a conclusion supported by a subsequent opinion of the court. In *Liddell v. First Family Financial Services, Inc.*, the Fifth Circuit rejected the plaintiffs' attempt to extend *Allan Construction's* reference to the self-concealing nature of fraud to a case involving fraud claims grounded in Mississippi state law. 146 Fed. Appx. 748, 750-51 (5th Cir. 2010). The Court distinguished *Allan Construction* as a case interpreting the doctrine of fraudulent concealment "*under Texas law*" indicating that it was not binding precedent for fraud claims not subject to the Texas fraudulent concealment doctrine. *Id.* at 750, 750 n.9 (rejecting plaintiffs' argument that *Texas* precedent should control the *Mississippi* fraud claims). As such, the Court rejects the proposition that all claims grounded in the federal securities statutes are inherently self-concealing. *See also OBG Technical Servs., Inc., v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 507 (D. Conn. 2007) ("[n]ot every fraud is self-concealing").

Having found that the SEC's claims are not, by virtue of their fraud-based nature, self-concealing as a matter of law, this Court now examines whether the claims are otherwise self-concealing based on a case-specific review of the factual allegations. The theory that a fraud can be "self-concealing" finds its roots in the Supreme Court's decision of *Bailey v. Glover,* 88 U.S. 342 (1874), where the concept was described as follows:

> [W]here the party injured by the fraud remains in ignorance of it *without any fault or want of diligence or care on his part,* the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

12

*OBG*, 503 F. Supp. 2d at 506-07 (quoting *Bailey*, 88 U.S. at 348). Since *Bailey*, this federal common

law concept has been the subject of "considerable criticism" because of "the loose language that some

courts use when applying the concept." *Id.* at 507. One court provided insight by observing that

"[t]he requirement that the fraud 'conceal itself' must mean more than that the plaintiff is ignorant

of the deception." *Long v. Abbott Mortgage*, 459 F. Supp. 108, 120 (D. Conn. 1978). The *Long* court

further noted:

> A better reading of the phrase is that it encompasses an enterprise where the
> particular fraud is, by its nature, unknowable. A fraud "conceal(s) itself" when a
> plaintiff, even by the exercise of due diligence, could not uncover it. It is
> distinguishable from "affirmative concealment" because that doctrine requires some
> conduct of the defendant directed at the objective of keeping the fraud concealed.
> By contrast, a fraud conceals itself when the defendant does only what is necessary
> to perpetrate the fraud, and that alone makes the fraud unknowable, without
> additional efforts at concealment. In other words, the very essence of the fraudulent
> practice itself prevents discovery.

*Id.* at 120.

Other than the fraud-based nature of the claims themselves, the only other facts the SEC

relies on in maintaining that the defendants' acts were inherently self-concealing is that there were

no "red flags" apprising the Commission of possible back-dating violations at Microtune before 2005

and therefore the SEC had no reason to doubt Microtune's actions or suspect the company of any

wrongdoing. SEC Br. Opp'n at 8. But the SEC supplies no authority that the "absence of red flags"

as to the fraud constitutes any indicia of a fraud's self-concealing nature. Moreover, the "absence of

red flags" in no way equates to a finding that the fraud was hidden or incapable of being known as

those terms are described in *Long* or *Bailey*. Instead, the absence of red flags is more akin to arguing

that the defendants' silence prevented the SEC from discovering the backdating scheme.

Concealment by silence or the simple fact that a fraud was unknown to the plaintiff is not enough

to establish that a fraud itself is self-concealing. *Long*, 459 F. Supp. at 120; *Jones*, 476 F. Supp. 2d at 382. Rather, as addressed by the court, the fraud must be incapable of being known even in the exercise of diligence by the plaintiffs. *Long*, 459 F. Supp. 120. The SEC has failed to establish that the "very essence" of the defendants' backdating scheme itself prevented its discovery. Accordingly, the Court finds that, as a matter of law, there is no genuine dispute of material fact as to whether Bartek's and Richardson's alleged fraudulent acts were self-concealing.

Having found that the Defendants' acts were not self-concealing, the Court must determine if there is a fact issue as to whether Bartek and Richardson *actively* concealed their alleged wrongdoing, which the parties hotly dispute. The Court has examined the voluminous and conflicting evidence submitted by the parties and finds that a genuine issue of material fact has been raised as to whether the Defendants concealed their alleged wrongdoing through affirmative acts, such that summary judgment *on the concealment element* of fraudulent concealment is precluded. However, this finding is not determinative as to whether the SEC may defeat Bartek's Motion for Summary Judgment, as the SEC must show that there remains a fact issue as to whether it acted diligently and whether it had inquiry notice within the limitations period.

ii.    Diligence

A party seeking to toll the statute of limitations through the fraudulent concealment doctrine must also show that it acted diligently. Under the fraudulent concealment doctrine, the statute of limitations may be tolled until "'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'" *Long*, 459 F. Supp. at 113 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir. 1974)). To determine

whether the plaintiff knew or should have known of the defendants' conduct, or had "inquiry notice," the Court must determine first, "whether plaintiff was aware of any facts sufficient to put him on notice, thereby creating an obligation of diligence," and second, if there is an obligation of diligence, "whether plaintiff fulfilled that duty of diligence." *Id.*

Accordingly, the SEC, in order to toll the statute of limitations under fraudulent concealment, must show that it acted diligently in discovering and then further developing the facts forming the basis for its claims against Richardson and Bartek.[13] Also, given that fraudulent concealment allows the court to toll the statute of limitations under principles of equity, the Court gleans from this doctrine a requirement that the SEC must have acted diligently in filing its complaint in a timely manner once it had inquiry notice.[14] *See, e.g., Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 387-88 (7th Cir. 2010) (in private plaintiffs' RICO case, "the plaintiff must both use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment, and *diligently endeavor to sue within the statutory*

---

[13] *Cf.* Hr'g Tr. Oct. 29, 2010 at 34 (counsel for SEC explains with respect to the requirements of the fraudulent concealment doctrine, "[d]iligence comes in after we are on inquiry notice").

[14] The SEC argues in its supplemental briefing "[i]t is black letter law that a plaintiff can establish the diligence element of fraudulent concealment by demonstrating the absence of any 'storm warning' putting a plaintiff on notice of a need to inquire or investigate." SEC First Supplemental Br. 7, *citing Cetel v. Kirwan Fin. Group*, 460 F.3d 494, 507 (3rd Cir. 2006); *SEC v. Tambone*, 550 F.3d 106, 148 (1st Cir. 2008); *Koenig*, 557 F.3d at 739-40; *SEC v. Kearns*, 691 F. Supp. 2d 601, 612-13 (D.N.J. 2010). While perhaps there were no "storm warnings" that would have alerted the SEC to backdating at Microtune prior to receipt of the tricks on timing email, this analysis is more relevant to the issue of when the SEC had inquiry notice, not whether the SEC is required to show diligence *after* it became apprised of backdating at Microtune. The Court also notes that the SEC's cited cases generally apply the discovery rule, which this Court has already found inapplicable to Section 2462. *See, e.g., Cetel*, 460 F.3d at 507 ("In determining when a RICO claim accrues, we apply an injury discovery rule whereby a RICO claim accrues when plaintiffs knew or should have know of their injury.") (citation omitted).

*limitations period or as soon thereafter as feasible.*") (emphasis added).[15] Contrary to the SEC's contention, the Court finds that equity would not be served by allowing the SEC to wait a full five years to file its case after being apprised of Microtune's practices, if the SEC did not act diligently during this five-year period.[16]

Bartek argues that the SEC is not entitled to equitable tolling because the SEC was aware of, or should have been aware of, Microtune's backdating practices in 2000, when the SEC investigated Microtune's "cheap stock" practices in connection with the company's initial public

---

[15] The Court in *Jay E. Hayden Foundation* explained the need for plaintiffs to file their complaints promptly and the problems caused by delays in filing:

> [W]e said that the defendants' obstructive behavior may have prevented the plaintiffs from obtaining enough information before 2005 to know they'd sustained a legal injury and by whom it had been inflicted. But that did not automatically give them four more years to sue. Tolling doctrines need not extend the date on which the statute of limitations begins to run; for as soon as the tolling events cease . . . the plaintiffs should get to work and file suit as soon as is practicable, in order to minimize the inroads that dilatory filing makes into the policies served by statutes of limitations. . . . To litigate a claim so long after the events giving rise to it is bound to be difficult because of lost evidence and faded memories, and the difficulty would be needlessly augmented had the plaintiff no duty of alacrity once the facts that the defendants had improperly concealed are at last in the open. By 2005 the plaintiffs knew *so* much that they did not need three more years to complete their precomplaint investigation and file suit.

610 F.3d at 387-88. The Court recognizes that the afore-mentioned case involves civil RICO claims brought by a private plaintiff, but the principles expressed are equally applicable to this case. Here Bartek and Richardson both argue that their defenses have been prejudiced by the passage of time, a point not disputed by the SEC, and it also appears that a considerable amount of facts "were in the open" by at least mid-2004, such that the SEC should not have needed until mid-2008 to file its complaint.

[16] Judge Posner has explained that "[s]tatutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given a grudging application. They protect important social interests in certainty, accuracy, and repose." *Cada*, 920 F.2d at 452-53. After quoting this statement, the Eighth Circuit explained that "[h]ence, while it is inherently difficult to predict when resort to the saving grace of equitable modification is appropriate, it is important to remember that such relief is an exception to the rule, and should therefore be used only in exceptional circumstances." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1330 (8th Cir. 1995).

offering, triggering a duty to inquire which was not met.[17] Alternatively, Bartek argues that the SEC knew or should have known of Microtune's backdating practices as of August 26, 2003, and the SEC failed to act diligently after this inquiry notice. At that time the SEC, in connection with an investigation into Microtune's revenue reporting, received an email from Bartek to William Housley dated June 26, 2001, entitled "new options" and stating, in pertinent part,

> Per our discussion at the salary reviews, we are putting option grants in for [certain employees] . . . . You should get the details on vesting so that you can communicate to each of the grantees their new grants. They will be pleased with the price. Barbara pulled some tricks on timing, and we are documenting that this grant was done on May 2, and therefore the closing price on May 1 is the option price: $12.35. So, they're already almost $8 in the money!!

SEC Br. Supp. Mot. 9 and App. 296 (Harris Dec. ¶ 13) (hereafter "the tricks on timing email"). In response, the SEC argues that backdating was neither at issue nor should it have been in the 2000 cheap stock investigation such that it had no duty to inquire regarding Microtune's backdating practices in 2000. The SEC concedes that the 2003 tricks on timing email put it on notice of backdating at Microtune but argues it acted diligently up until receipt of the email, and no further diligence was required other than filing its complaint within five years of inquiry notice.

Based on the parties' arguments and the conflicting evidence they submitted, the Court finds that there is a genuine issue of material fact as to whether the SEC had inquiry notice of option backdating practices at Microtune in 2000 as a result of the SEC's cheap stock investigation such that the SEC would be required to show its diligence at that time.[18] The Court reaches a different

---

[17] In essence, Bartek argues that the SEC's cheap stock investigation focused on Microtune's stock option practices, Microtune was backdating stock options in 2000, and a diligent inquiry by the SEC would have discovered backdating at that time.

[18] The Court expresses no opinion as to whether the SEC's argument, that it did not have inquiry notice in 2000, is more persuasive than Richardson's and Bartek's argument that the SEC did have such notice

conclusion, however, with respect to the effect of the tricks on timing email the SEC received on August 26, 2003. The SEC concedes that this email gave the SEC inquiry notice of at least some of Microtune's backdating practices.[19] Therefore, the Court must examine whether the SEC acted diligently upon receipt of this email. The SEC's initial actions after receipt of the email show that, at a minimum, the SEC was aware, or should have been aware, of Microtune's practice of backdating options granted to new employees in 2003. After receiving the tricks on timing email, the SEC proceeded to question at least two Microtune employees, Barbara Ureste and William Housely, in late 2003 (as well as Bartek in early 2004) regarding Microtune's practice of backdating grants to newly hired executives and other employees by picking the lowest stock price on any day within a "two-week window" of the employee's start date. Bartek Mot. App. 812-14 (doc. 117-8 at 154-156) (Ureste testimony); Bartek Mot. App. 816-17 (doc. 117-8 at 159-160) (Housley testimony); Richardson Mot. App. 658-659 (doc. 120-22 at 10-11) (Bartek testimony). Despite this evidence, the SEC apparently took no more action to investigate backdating at Microtune until the company brought its option granting practices to the SEC's attention in 2006,[20] even though the terms of the

at that time.

[19] *See, e.g.,* Hr'g Tr. Oct. 29, 2010 at 14 ("So on August 26th, 2003, in our revenue recognition investigation, we stumbled upon an e-mail that referred to tricks on timing. And at that point we were on inquiry notice, and we embraced that."); *id.* at 31 ("That's why we say that we were on inquiry notice on August 26, 2003," referring to fact that tricks on timing email alerted SEC to backdating). The SEC also received several other emails in 2003 and 2004 discussing Microtune's option practices in connection with the revenue recognition investigation. *See, e.g.,* Bartek Mot. App. 1681-92 (doc. 117-13 at 120-131) (SEC response to Bartek's first set of requests for admission, discussing emails produced to SEC in 2003 and 2004).

[20] Hr'g Tr. Oct. 29, 2010 at 23 (counsel for SEC explains that after Microtune reported backdating issues to SEC in 2006, "[t]hat's when we launched our investigation and brought our suit, within a couple of years of that."); *see also* Am. Compl. ¶¶ 160-61 (SEC discovered "the backdating scheme on or about July 27, 2006, when Microtune publicly announced that its audit committee had commenced an internal review of the company's stock option grant practices," and "[w]ithin weeks of this initial public disclosure of backdating practices at Microtune, the Commission staff opened an informal inquiry into Microtune's option granting

SEC's 2003 revenue recognition subpoena expressly requested documents regarding Microtune's option granting practices and even though the SEC continued to receive documents discussing Microtune's backdating after the tricks on timing email.[21]

In 2006, the SEC once again began to investigate Microtune's option granting practices in response to the company's public announcement on or about July 27, 2006 that it was commencing an internal review of these practices, FAC ¶¶ 160-61, though the SEC did not file its suit until June 30, 2008. When asked about the SEC's diligence and the 2006 Microtune internal investigation, counsel for the SEC explained that "we, often for resource reasons, wait until the company does its own investigation before we complete ours." Hr'g Tr. Oct. 29, 2010 at 34-36. While perhaps an understandable method of allocating Commission resources, such justification does not excuse the SEC's apparent inactivity from mid-2004 to mid-2006,[22] when further investigation would have uncovered the full extent of Microtune's backdating and would have allowed the SEC to bring a complaint against Microtune much earlier than 2008.[23] As such, the Court concludes that the SEC has failed to raise genuine issue of material fact as to whether it diligently pursued its claim once it received the tricks on timing email on August 26, 2003, and the SEC is therefore not entitled to

---

practices").

[21] Bartek Opp'n App. 63 (doc. 135-1 at 77). The SEC's August 4, 2003 subpoena issued to Microtune requested, *inter alia*, "[a]ll items in personnel files and any other files maintained during the relevant period, including documents relating to compensation arrangements such as bonus plans, stock option grants, [and] incentive packages . . ." for several employees, including Bartek and Richardson. *Id.*

[22] At the October 29, 2010 hearing the SEC stated "[t]he diligence . . . is simply that we were on inquiry notice August 26th [2003], and we brought a case within five years. That's it." Hr'g Tr. Oct. 29, 2010 at 35. The Court rejects this interpretation of equitable tolling.

[23] The Court does not determine the time period during which the SEC, acting diligently after receiving inquiry notice, should or would have filed suit against Bartek and Richardson.

tolling under the fraudulent concealment doctrine.

iv.    Discovery of the Violation Within the Limitations Period

Richardson and Bartek seek to apply a third requirement of fraudulent concealment imposed by some courts: "failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period." *See, e.g.*, Bartek Br. Supp. Mot. 27-29(quoting *FEC v. Williams*, 104 F.3d 237, 241 (9th Cir. 1996); *Galvan v. Caviness Packing Co.*, 546 F. Supp. 2d 371, 377 (N.D. Tex. 2008) (applying Texas law)). They claim there is no genuine issue of material fact as to whether the SEC discovered the operative facts within the limitations period, and this constitutes additional grounds that preclude equitable tolling in this case. To meet this requirement, a party seeking to toll the statute of limitations must show that it did not have inquiry notice of the alleged wrongdoing before the statute of limitations period had run. The SEC argues that this requirement is not present in the Fifth Circuit's version of fraudulent concealment, citing to *Allan Construction*, 851 F.2d at 1528, and *SEC v. Cochran*, 1999 WL 33292713, *4 (W.D. Okla. Jan. 28, 1999). SEC Reply Br. Supp. Mot. 20-21; *see also In re Energy Transfer Partners Natural Gas Litig.*, 2009 WL 2633781, at *13 (S.D. Tex. Aug. 26, 2009) (citing *Allan Constr.*, 851 F.2d at 1528) (other citations omitted). However, as previously explained, *see* Section III(B)(i), *supra*, the Fifth Circuit in *Liddell*, 2005 WL 2044555, at * 2 & n.9, distinguished *Allan Construction* as a case interpreting the doctrine of fraudulent concealment "*under Texas law*" indicating that it was not binding precedent for fraud claims not subject to the Texas fraudulent concealment doctrine. The Court therefore adopts the "three prong test" for fraudulent concealment requiring the plaintiff to have discovered the violation after the statute of limitations had run, which appears to be the version adopted by a majority of courts. *See, e.g.*, *Hamilton County Bd. Comm'rs v. Nat'l Football League*, 491

F.3d 310, 315 (6th Cir. 2007); *Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36 (2d Cir. 2002), *overruled on other grounds*, *Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006)); *Williams*, 104 F.3d at 241; *Berkson v. Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984); *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154-1155 (10th Cir. 1981). The Court is aware of justifications for and against this version of the fraudulent concealment doctrine. The SEC argues, and the *Cochran* court found, that to impose this requirement would allow "a party who fraudulently concealed a violation of law [to] benefit in the form of a shorter limitation period." *Cochran*, 1999 WL 33292713, at * 5. However, if a plaintiff discovers his claims within the limitations period, especially if he still has two years or more remaining in which to file his complaint (as is this case here), there is obviously a lesser need, if any, to toll his claims. *See, e.g.*, *Roberts v. Barreras*, 484 F.3d 1236, 1242 (10th Cir. 2007) ("[I]f a plaintiff discovers the injury within the time limit, fraudulent concealment does not apply because the defendant's actions have not prevented the plaintiff from filing the claim within the time period and the equitable remedy is not necessary.") (citation omitted) (applying N.M. state law).[24]

The Court concludes that there is no genuine issue of material fact as to whether the SEC discovered the operative facts that are the basis of its cause of action within the limitations period. The SEC concedes that it was on inquiry notice of backdating at Microtune as of August 26, 2003 because of its receipt of the tricks on timing email. The SEC also alleged that Bartek and Richardson

---

[24] In the context of a civil RICO suit, Judge Posner discussed the plaintiffs' need to sue within the limitations period if possible: "Armed with the information obtained [midway through the limitations period] they should have been able to complete well within the four-year statutory period an investigation that would have unearthed enough facts to enable them to file a suit that would withstand dismissal. They could then have used pretrial discovery to beef up their claim." *Jay E. Hayden*, 610 F.3d at 386 (citations omitted). Here, the SEC's subpoena power should have enabled the SEC to obtain enough facts to file a suit, before the end of the limitations period, that would withstand dismissal.

"caused Microtune, Inc. to engage in a fraudulent stock-option backdating scheme" from at least August 4, 2000 through mid-2003, *see* FAC ¶ 1,[25] meaning that Section 2462's five-year limitations period had not yet run by the time the SEC had inquiry notice in 2003. The SEC clearly discovered the operative facts that are a basis of its claim within the limitations period, and the lack of a fact issue on this element constitutes additional grounds precluding tolling under the fraudulent concealment doctrine.

Due to the Court's determination that there is no fact issue as to whether the SEC acted diligently upon receiving inquiry notice nor whether it discovered the operative facts within the limitations period, the SEC is not entitled to tolling under the fraudulent concealment doctrine. As the Court has already determined that other tolling doctrines do not apply, the five-year statute of limitations of Section 2462 is not tolled. However, Bartek and the SEC reached a tolling agreement on October 30, 2007, which expressly preserved all claims the SEC had against Bartek as of that date, and this agreement was extended to June 30, 2008, the date the complaint was filed. *See* Bartek Mot. App. 1676-1678 (tolling agreement and extension to June 30, 2008). Therefore all claims seeking penalties as to Bartek which accrued before October 30, 2002, five years before Bartek signed the tolling agreement, are hereby **DISMISSED**. Also, all claims seeking penalties as to Richardson which accrued before June 30, 2003 are also **DISMISSED**.[26]

---

[25] The Court finds that even if this element is not part of the Fifth Circuit's version of fraudulent concealment, there is no genuine issue of material fact as to the SEC's diligence under the fraudulent concealment doctrine, *see* Section III(B)(ii), *supra*, and the SEC's claims are therefore not tolled.

[26] The Court dismisses these claims with respect to both Richardson and Bartek even though only Bartek moved for summary judgment as to the issue of limitations, given that the SEC moved for summary judgment on the issue in its Motion for Partial Summary Judgment, such that it has been fully briefed and evidence on the issue has been presented by all parties. *See In Re Caravan*, 864 F.2d at 393.

C.    *Penalty under Section 2462*

The parties agree that Section 2462 applies to any relief sought by the SEC that is a penalty,[27] though they disagree on which forms of relief constitute penalties subject to Section 2462's five-year bar.[28] The SEC argues that the injunctive relief, disgorgement, officer-and-director bars, and reimbursement it seeks are equitable remedies not subject to Section 2462, while Bartek and Richardson argue that all these forms of relief are penalties as they seek to punish them for their alleged wrongdoing, rather than merely remedy the harm caused by their actions. As conceded by the SEC, the civil monetary penalties it seeks are subject to Section 2462's five-year statute of limitations. Therefore all claims against Richardson which accrued before June 30, 2003, to the extent they seek civil monetary penalties, are hereby **DISMISSED**. Also, all claims against Bartek which accrued before October 30, 2007, to the extent they seek civil monetary penalties, are also **DISMISSED**. This holding does not end the Court's inquiry, however, as it must determine whether other forms of relief sought by the SEC are penalties subject to Section 2462.

As explained by the D.C. Circuit in *Johnson v. SEC*, "a 'penalty,' as the term is used by Section 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action." 87 F.3d 484, 488 (D.C. Cir. 1996). The Court further explained that the test is objective,

---

[27] The SEC contends, however, that various tolling doctrines apply such that Section 2462's statute of limitations had not yet run when it filed its complaint, an argument that the Court has already rejected.

[28] The Court at this time considers whether summary judgment, on the issue of whether the SEC's requested relief constitutes penalties under Section 2462, is appropriate as to either Bartek *or* Richardson. Richardson did not move for summary judgment on limitations, but the SEC and Bartek moved for summary judgment on the issue, such that it has been fully briefed and evidence on limitations has been presented by all parties. *See In Re Caravan*, 864 F.2d at 393.

"not measured from the subjective perspective of the accused (which would render virtually every sanction a penalty)," but "the degree and extent of the consequences to the subject of the sanction must be considered as a relevant factor in determining whether the sanction is a penalty." *Id.* Under this test, the *Johnson* court found that a Commission censure and six-month suspension sought against a stockbroker were penalties, due to their collateral consequences on her ability to earn a living both during and after the suspension and also the SEC's failure to focus its findings on the defendant's current competence or the degree of risk she posed to the public. *Id.* at 488-90. Under the *Johnson* test, courts have found that even equitable relief may be penalties subject to Section 2462 in certain cases. *See, e.g., SEC v. DiBella*, 409 F. Supp. 2d 122, 127-28, 128 n.3 (D. Conn. 2006) (finding that requests for permanent injunction and officer-and-director bar sought to punish defendant for role in alleged backdating and were penalties subject to Section 2462 but finding disgorgement was not penalty). Determining whether proposed remedies are penalties subject to Section 2462 requires a "fact-intensive inquiry." *See SEC v. Alexander*, 248 F.R.D. 108, 115-16 (E.D.N.Y. 2007) (citing *Johnson*, 87 F.3d at 488).

Bartek argues, and the SEC does not dispute, that the requested relief will have substantial collateral consequences to him:

> If the SEC prevails here, then Bartek will forever be forced to disclose the imposition of any injunction or O&D bar to future employers and regulatory authorities, and it will "become[] part of [his] permanent public file," creating "long[]-lasting repercussions" to his reputation and career. *Johnson*, 87 F.3d at 489. In the investment community, the collateral consequences of any kind of injunction "are quite serious," effectively "stigmatiz[ing]" the defendant for the rest of his life. *Jones*, 476 F. Supp. 2d at 385.

Bartek Br. Supp. Mot. 22. While the *Johnson* court made clear that collateral consequences alone are not sufficient to render relief sought a penalty, the extent of collateral consequences that would

result from the SEC's requested relief here weighs in favor of characterizing the various forms of relief as penalties.

The Court must also evaluate the extent to which the relief sought focuses on remedying the damage caused by Bartek's conduct and the extent to which the relief seeks to prevent future harm. Bartek argues:

> [T]he SEC's case against Bartek is focused entirely on his *past* alleged misconduct rather than any risk of a future violation. *See Johnson*, 87 F.3d at 489; *see also Jones*, 476 F. Supp. 2d at 384. All of the stock option grants at issue in this case occurred in 2001 and 2002 and were made with the guidance and approval of legal and accounting experts. There is no evidence – nor any allegation – that Bartek has engaged in any misconduct since he left Microtune in 2003, and nothing demonstrates that he is likely to do so in the future. In fact, the evidence shows that Bartek is no longer in a position to commit any securities violations because he has not served as an officer or director of a public company since his departure from Microtune.[29]

Bartek Br. Supp. Mot. 22-23 (internal references omitted). Bartek also argues that the SEC's 2006 Guidance Letter clarified the SEC's rules with respect to option backdating such that future stock option accounting errors and related securities reporting errors are highly unlikely. Bartek Br. Opp'n at 13 (citing Bartek Mot. App. 1323-1324 (Epstein Decl.); 1509-1510 ¶¶ 71-73 (Ostiller Decl.); 1577-1578 ¶¶ 21-25 (Ostiller Rebuttal Decl.); 1253-1256 (Anderson Dep.)).

In response, the SEC argues that injunctive relief, disgorgement, and officer-and-director bars are all remedial. SEC Br. Opp'n 5 (citing *SEC v. Leslie*, 2008 WL 3876169, at * 8 (N.D. Cal. Aug. 19, 2008); *SEC v. Harden*, 2006 WL 89864, at *1 (W.D. Mich. Jan. 12, 2006); *SEC v. Quinlan*, 2008 WL 4852904, at *12 (E.D. Mich. Nov. 7, 2008); *SEC v. Berry*, 580 F. Supp. 2d 911, 919 (N.D. Cal.

---

[29] Richardson makes similar arguments in her briefing. *See* Richardson Br. Opp'n at 17-19. The Court notes the different factual circumstances as to Bartek and Richardson but finds that the collateral consequences are similarly severe for both Richardson and Bartek, and it is also unlikely that either Bartek or Richardson would engage in similar misconduct in the future.

2008); *SEC v. Fisher*, 2008 WL 2062699, at *2 n.5, 8 (N.D. Ill. May 13, 2008)) (all finding these types of relief in respective SEC enforcement actions remedial). The SEC also argues that repayment of profits from stock sales under Section 304 of the Sarbanes-Oxley Act of 2002 ("Section 304") is not punitive, as "it restores the *status quo ante* by returning equity-based compensation to Microtune." *Id.* at 5-6 (*citing Miss. Dep't Econ. & Cmty. Dev. v. U.S. Dep't Labor*, 90 F.3d 110, 113 (5th Cir. 1996) for the proposition that "debt 'repayment action does not involve a claim for a civil fine, penalty or forfeiture under Section 2462'"). As a remedy "more akin to the general equitable remedy of disgorgement – to which Section 2462 does not apply – than a statutorily quantified civil money penalty," the SEC argues that Section 2462 does not apply to its Section 304 claim. *Id.* at 6. In reply, Bartek argues that the SEC, instead of offering evidence as to collateral consequences and likelihood of recurrence, simply cites case law for its contention that Section 2462 does not apply to its requested remedies. Bartek Reply Supp. Mot. 4. Bartek also distinguishes the cases cited by the SEC, explaining that four of the cases cited by the SEC "are inapposite because they were decided at the motion to dismiss stage, before development of the record" while the fifth case found that the claims were not penal "only because there was overwhelming evidence that the defendant posed a significant risk to the investing public, including that he had been convicted and sought 'to return to the investment industry upon his release from prison.'" *Id.* at 4 n.1 (citing *Quinlan*, 2008 WL 4852904, at *12). Bartek also argues that since he did not exercise backdated stock options he has no "ill-gotten" gains to disgorge, and the SEC has not identified what profits he gained from stock sales or bonuses that would be subject to Section 304's reimbursement remedy. Bartek Br. Supp. Mot. 49-50.

i.        Injunctive Relief and Officer-and-Director Bars

The Court finds that injunctive relief and officer-and-director bars in this case are properly construed as penalties as a matter of law, as it is clear that these remedies would have significant collateral consequences to Richardson and Bartek, neither remedy addresses past harm caused by the Defendants, and neither remedy is focused on preventing future harm due to the low likelihood that Richardson and Bartek would engage in similar behavior in the future.[30] As penalties, they are subject to Section 2462's statute of limitations. Therefore all claims, to the extent they seek injunctive relief or officer-and-director bars as to Richardson, which accrued before June 30, 2003 are hereby **DISMISSED**. Also, all claims to the extent they seek injunctive relief or officer-and-director bars as to Bartek, which accrued before October 30, 2007, when Bartek signed the tolling agreement, are also **DISMISSED**.

---

[30] The Court finds an examination of *SEC v. Quinlan*, 2008 WL 4852904 (E.D. Mich. Nov. 7 2008) instructive. In *Quinlan*, the defendant had previously pled guilty to "conspiring to obtain funds from investors by means of false and fraudulent pretenses, representations, and promises and making false statements," and the defendant, in his plea agreement, admitted that he knew about and approved of the false representations, admitted that he participated in and presided over the committee that decided to deliberately engage in fraudulent business and accounting practices, admitted that his company's true financial condition was materially worse that it was represented to be in SEC filings, and admitted that these filings included materially false statements and omitted material facts about his company's true financial condition. *Id.* at *2. The court found that a permanent injunction and officer-and-director bar were appropriate given that the defendant "knowingly and deliberately engaged in fraudulent business and accounting practices" over six years, "repeatedly made false financial statements and misrepresented material facts with the intention to mislead investors" and "lied to auditors," showed no remorse "for the tremendous loss suffered by the investors," was convicted in both state and federal court for securities violations in connection with the same conduct underlying the civil suit, and was reasonably likely to engage in future violations of federal securities laws if allowed to once again serve as a corporate officer or director. *Id.* at 9, 12. In contrast, in this case the parties dispute Richardson's and Bartek's scienter (and indeed, it is not clear that the business community was even aware that backdating was unlawful at the time), there have been no related criminal cases nor convictions in connection with the backdating, the parties dispute whether Microtune investors have suffered any significant losses directly related to backdating, and there appears to be a very low likelihood that Richardson and Bartek will engage in these practices again.

The Court finds that the relief sought by the SEC is properly construed as a penalty to the extent that it seeks reimbursement under Section 304 of any bonuses or profits from stock sales by Bartek and Richardson. The SEC argues that Section 304 is not subject to Section 2462's statute of limitations because it is, in its view, an "equitable remedy akin to disgorgement," and courts generally find that disgorgement is not subject to Section 2462's statute of limitations. The SEC cites to, *inter alia*, *SEC v. Jenkins*, 718 F. Supp. 2d 1070 (D. Ariz. 2010), for this proposition, but this very case highlights the difference between Section 304's statutory reimbursement remedy and equitable disgorgement – Section 304 contains no *personal* wrongdoing element, in contrast to disgorgement, that would require scienter or misconduct on behalf of the officers in order to trigger reimbursement. *Id.* at 1078.[32] *See also SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) ("Disgorgement wrests ill-

---

[31] Section 304(a) of the Sarbanes-Oxley Act provides:

(a) Additional Compensation Prior to Noncompliance With Commission Financial Reporting Requirements.

If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for--

(1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12-month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

(2) any profits realized from the sale of securities of the issuer during that 12-month period.

15 U.S.C. § 7243.

[32] The *Jenkins* court explained that "Section 304 provides an incentive for CEOs and CFOs to be rigorous in their creation and certification of internal controls by requiring that they reimburse additional compensation received during periods of corporate non-compliance regardless of whether or not they were

gotten gains from the hands of a wrongdoer" and is "meant to prevent the wrongdoer from enriching himself by his wrongs" rather than "aim to compensate the victims of the wrongful acts, as restitution does.") (citation omitted). Given that Section 304 does not require that the officer's gains be "ill-gotten," *Jenkins*, 718 F. Supp. 2d at 1078, its reimbursement remedy is not the equivalent of disgorgement.

Having found that reimbursement under Section 304 is not a form of disgorgement, the Court must still analyze whether reimbursement is properly characterized as a penalty under Section 2462. The *Johnson* court explained "where the effect of the SEC's action is to restore the *status quo ante*, such as through a proceeding for restitution or disgorgement of ill-gotten profits, Section 2462 will not apply." 87 F.3d at 491 (citations omitted). The SEC argues that reimbursement seeks to restore the *status quo ante* in that it that returns equity-based compensation to Microtune – in essence, a statutory form of restitution.[33] SEC Br. Opp'n 5-6; *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 74-75 (5th Cir. 1993) (distinguishing disgorgement from restitution, which "has the goal of making the aggrieved party whole") (citing *First Penn. Corp. v. Fed. Dep. Ins. Corp.*, 793 F.2d 270, 272 (10th Cir. 1986)). This argument fails because the amount of reimbursement is not limited to the amount of harm caused to the company, nor are the stock profits and bonuses required to be causally related to the alleged wrongdoing. Instead, Section 304 requires reimbursement of *all* stock

---

aware of the misconduct giving rise to the misstated financials." 718 F. Supp. 2d at 1077.

[33] At oral argument, the SEC argued that reimbursement under Section 304 was a form of statutory *disgorgement*, but instead of focusing on Bartek's ill-gotten gains, it also discussed the harm to shareholders: "[i]n this case, we think that [disgorgement] may be particularly appropriate because the shareholders have been on the hook for tens of millions of dollars related to the internal investigation and defense costs, and the shareholders have definitely been a victim here." Hr'g Tr. Nov. 19, 2010 at 156. This type of remedy seems more properly characterized as restitution, not disgorgement.

profits and bonuses received within a twelve-month period after specified filings. This absence of a link between the amount of reimbursement and the actual harm caused by the defendant weighs in favor of characterizing Section 304's reimbursement remedy as a penalty. As a penalty, it is subject to Section 2462's statute of limitations. Accordingly, all claims seeking reimbursement under Section 304 and which accrued prior to June 30, 2003 are time-barred with respect to Richardson and are hereby **DISMISSED**. Also, all claims seeking reimbursement under Section 304 and which accrued prior to October 30, 2002 are time-barred with respect to Bartek and are hereby **DISMISSED**.

iii.    Disgorgement

With respect to disgorgement,[34] the SEC acknowledges that Bartek did not exercise any backdated stock options. Thus Bartek has no profits from backdated options to disgorge. Also, the SEC does not identify which, if any, profits from his stock sales or bonuses are attributable to his wrongdoing such that disgorgement would be appropriate.[35] *See SEC v. Seghers*, 2010 WL 5115674, at *1 (5th Cir. Dec. 13, 2010) ("the party seeking disgorgement must distinguish between gains that were legally and illegally obtained" and affirming district court's order denying disgorgement due to SEC's failure to distinguish gains) (*citing Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007); *First City*, 890 F.2d at 1231; *DiBella*, 409 F. Supp. 2d at 127 ("Disgorgement . . . is remedial in the sense that if there were no profits earned as a result of the illegal conduct, disgorgement would not be an available remedy."). As such, all claims against Bartek, to the extent

---

[34] The Court notes that while disgorgement is generally equitable relief not subject to statutes of limitations such as Section 2462, the *Johnson* decision makes clear that *any* relief which is properly characterized as a penalty is subject to Section 2462.

[35] Instead, the SEC contends that the portion of Bartek's stock gains attributable to any inflation in Microtune's stock price caused by backdating should be established through experts at trial. Hr'g Tr. Nov. 19, 2010 at 156.

they seek disgorgement, are **DISMISSED.** The Court makes this determination with respect to all of the SEC's claims, not merely those which accrued prior to October 30, 2002.

The Court notes, however, that Richardson appears to have exercised backdated stock options, and therefore disgorgement of the "in-the-money" profits she enjoyed from exercising these options is not a penalty barred by Section 2462. Accordingly, the Court declines to grant Richardson summary judgment *sua sponte* as to the issue of disgorgement of in-the-money profits gained from the exercise of backdated options. However, the SEC does not identify which, if any, profits from her stock sales or bonuses are attributable to her wrongdoing such that disgorgement of these funds would be appropriate. As such, all claims against Richardson, to the extent they seek disgorgement of bonuses received and profits from stock sales not directly related to any backdated stock options are **DISMISSED.** The Court makes this determination with respect to all of the SEC's claims, not merely those which accrued prior to prior to June 30, 2003.

D.      *Accrual of Claims*

Having found that the SEC's claims are not tolled, the Court must determine when the Commission's claims accrued. Richardson argues that the claims accrued when the backdated options were granted, or alternatively, on the dates of the challenged SEC filings. Bartek argues that the claims accrued at the latest on the date of filing. The SEC does not clearly discuss which of its claims in the First Amended Complaint apply to which particular acts, i.e., grants of backdated options, representations made to Ernst & Young, representations made in various SEC filings, or failure to maintain proper records, though the SEC appears to focus primarily on Microtune's SEC filings.

The SEC's first count, "Violations of Exchange Act Section 10(b) ["Section 10(b)"] and

Exchange Act Rule 10b-5," states:

> By engaging in the conduct described [in the First Amended Complaint], Microtune, Bartek, and Richardson, with scienter, directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, or of the facility of a national securities exchange, in connection with the purchase or sale of securities: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

FAC ¶ 175. Section 10(b) claims may be based on both the act of granting backdated options and also SEC filings that do not properly disclose the backdating. *See, e.g.*, *In re Affiliated Computer Servs. Derivative Litig.*, 540 F. Supp. 2d 695, 701 (N.D. Tex. 2007). "A claim under Section 10(b) that is based upon the backdating itself accrues on the date the option grant was made," while "[a] claim under Section 10(b) and Rule 10-5 based on dissemination of false financial statements accrues when the allegedly false or misleading statement was made." *Id.* (citations omitted). Some of the SEC's other counts also appear applicable to both the act of backdating grants or some other event such as deficient SEC filings, such as the second count, "Violations of Securities Act Section 17(a)(1)," which alleges that "[b]y engaging in the conduct described [in the First Amended Complaint], Microtune, Bartek, and Richardson, directly or indirectly, by use of the means or instruments of interstate commerce or of the mails, in connection with the offer or sale of securities, with scienter, employed devices, schemes or artifices to defraud." FAC ¶ 182. Given the ambiguity in the First Amended Complaint, the Court at this time determines which specific events may underlie the SEC's claims in light of the Court's determinations regarding tolling, instead of determining which specific "counts" survive.

The SEC's claims are based in part on grants or regrants of backdated options occurring in April 2001, October or November 2001, June or July 2001, January 2002, and March 2002. FAC ¶¶ 36-37, 48-50, 66-67, 71, 74-75, and 80-81. The SEC also claims that Bartek and Richardson signed false management representation letters to Ernst & Young, and Richardson falsified an "APB checklist" relied upon by Ernst & Young in its audit of Microtune's 2002 Form 10-K. FAC ¶¶ 92-93. Additionally, the SEC claims that several of Microtune's SEC filings did not properly disclose backdating and had false certifications signed by either Bartek or Richardson. FAC ¶¶ 106-139.[36]

The Court notes that the identified instances of backdating all occurred more than five years before the SEC signed its tolling agreement with Bartek in 2007 and more than five years before the SEC filed its complaint. Accordingly, Section 2462's statute of limitations has run with respect to any claims based specifically on Microtune's backdating. The Court also notes that every SEC filing made while Bartek was still at Microtune was filed more than five years before he signed the tolling agreement, with the exception of the Form 10-Q filed November 14, 2002.[37] As such, Section 2462's statute of limitations has run with respect to any claims asserted against Bartek based on other SEC

_____

[36] The SEC also claims that Bartek and Richardson "knowingly falsified books, records, or accounts of Microtune, or knowingly circumvented or knowingly failed to implement a system of internal accounting controls at Microtune" and "knowingly or recklessly provided substantial assistance to Microtune in (i) its failure to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of Microtune; and (ii) its failure to devise and maintain a sufficient system of internal accounting controls." FAC ¶¶ 188, 209; *see also* ¶¶ 135-37. As with claims based on Section 10-b, these claims appear applicable to both Bartek's and Richardson's backdating and representations they made or signed that omitted backdating.

[37] The SEC also claims that Microtune's Form 10-K filed July 31, 2003 is actionable against Bartek even though he had left Microtune one month prior to its filing, as "his conduct during 2002 and prior years caused the 2002 filing to be materially false and misleading." FAC ¶¶ 122-25. The Court notes that this interpretation, carried to its logical extension, would impose liability on Bartek and Richardson for every Microtune SEC filing until Microtune disclosed the backdating that had occurred. The Court rejects this interpretation. *See, e.g.*, *SEC v. Rose*, 2006 WL 6549489, at *2 (S.D. Tex. Jan. 17, 2006) (dismissing claims based on SEC filings filed after defendant had left company).

filings.[38] The Court also notes that only four SEC filings at issue in this complaint were filed less than five years before the SEC filed its complaint on June 30, 2008: the 2002 Form 10-K filed July 31, 2003; the first quarter 2003 Form 10-Q filed July 31, 2003, the second quarter 2003 Form 10-Q filed August 14, 2003, and proxy materials dated August 11, 2003.[39] FAC ¶¶ 106-139; SEC Mot. App. 254-279. As such, Section 2462's statute of limitations has run with respect to any claims asserted against Richardson based on any SEC filings with the exception of the four above-mentioned filings.

Regarding representations made to Ernst & Young, the Court finds that claims based on these representations accrued on the date the representations were made or conveyed. Given the Court's previous findings regarding the inapplicability of any tolling doctrines to this case, the only actionable representations to Ernst & Young identified by the SEC with respect to Bartek are contained in the letter dated October 25, 2002. FAC ¶ 92. With respect to Richardson, the only actionable representations to Ernst & Young identified by the SEC may be found in the July 28, 2003 letter, the August 14, 2003 letter, the October 29, 2003 letter, and the APB checklist relied upon by Ernst & Young in its audit of Microtune's 2002 Form 10-K.[40] FAC ¶ 93.

---

[38] The SEC requests reimbursement of Bartek's stock profits and any equity-based or incentive-based compensation he received between August 14, 2002 and August 14, 2003, based on Microtune's second quarter 2002 Form 10-Q filed on August 14, 2002. SEC Br. Opp'n Bartek Mot. 41-42. The SEC does not point to any other filings that would support Section 304's reimbursement remedy as to Bartek. Given that the Court has already found that claims against Bartek based on SEC filings made before October 30, 2002 are time-barred, all claims seeking reimbursement under Section 304 with respect to Bartek are hereby **DISMISSED**.

[39] The SEC also claims that Richardson also should be liable for the nondisclosure of backdating in proxy materials dated September 17, 2003. FAC ¶ 118. Richardson contends, and the SEC does not dispute, that no proxy materials were filed with the SEC on that date, and Richardson should not be liable for statements not actually made. Richardson Br. Opp'n 10 n.7. The Court agrees.

[40] The First Amended Complaint does not identify the date this checklist was conveyed to Ernst & Young, and the cover page of the checklist does not show clearly the date it was prepared by Richardson, though it appears to read "4/28/03" or "7/28/03." Richardson Mot. App. 833 (doc. 120-30 at 29). The SEC represents that this questionnaire was completed by Richardson in July 2003. SEC Br. Opp'n Richardson Mot.

# IV.

## CONCLUSION

For the reasons stated above, the Court finds that Section 2462's five-year statute of limitations is not tolled by the fraudulent concealment doctrine. Further, all forms of relief sought by the SEC against Douglas J. Bartek are properly construed as penalties subject to Section 2462. All forms of relief sought by the SEC against Nancy A. Richardson, with the exception of disgorgement of Richardson's in-the-money profits resulting from the exercise of backdated options, are also properly construed as penalties. Accordingly, all claims against Bartek which accrued prior to October 30, 2002 are barred by Section 2462 and hereby **DISMISSED**. Also, all claims against Richardson which accrued prior to June 30, 2003 are barred by Section 2462 and hereby **DISMISSED**, with the exception of those claims that seek disgorgement of Richardson's in-the-money profits obtained through her exercise of backdated options. The Court further **DISMISSES** all claims by the SEC to the extent they seek disgorgement of profits from stock sales and bonuses not directly attributable to the exercise of back-dated stock options. The Court also **DISMISSES** all claims by the SEC to the extent they seek reimbursement under Sarbanes-Oxley Section 304 from Bartek.

Also, any claims against Bartek, except to the extent they request relief based on Microtune's Form 10-Q filed November 14, 2002 and the letter to Ernst & Young dated October 25, 2002 are **DISMISSED**. Any claims against Richardson, except to the extent they request relief based on the the 2002 Form 10-K filed July 31, 2003; the first quarter 2003 Form 10-Q filed July 31, 2003; the

---

27. Richardson states that this questionnaire was completed in March 2003. Richardson Reply 14. Given the ambiguity here, the Court finds that there is a fact issue as to whether claims based on the representations made in this checklist are barred by the statute of limitations.

second quarter 2003 Form 10-Q filed August 14, 2003; proxy materials dated August 11, 2003; the letters to Ernst & Young dated July 28, 2003, August 14, 2003, and October 29, 2003; and the APB checklist sent to Ernst & Young in 2003, are **DISMISSED**. While noting the Court's holdings in prior Orders and in this Order, particularly the determination that no tolling doctrines applied in this case, the Court makes no finding at this time as to which "counts" of the SEC's First Amended Complaint survive.

**SO ORDERED.**

**SIGNED: February 15, 2011.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE